IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LOCKTON COMPANIES, LLC – PACIFIC SERIES, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  Case No. 23-cv-00705-SRB ) |
| ALLIANT INSURANCE SERVICES, INC., *et al.*, | ) ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants Alliant Insurance Services, Inc. ("Alliant"), Gregory D. Barnes ("Barnes"), Scott Canales ("Canales"), Mark Racunas ("Racunas"), and Richard A. Roderick's ("Roderick") (collectively, "Defendants" or "Individual Defendants" if excluding Alliant) Motion to Dismiss. (Doc. #13.) For the reasons stated below, the motion is DENIED.

### I. FACTUAL BACKGROUND[1]

This case is another in a series of lawsuits between Plaintiffs Lockton Companies, LLC – Pacific Series ("Pacific Series") and Lockton Partners, LLC ("Lockton Partners") (collectively, "Lockton") and former Lockton Producer Members or Partners who have left to work for a competitor. This case, however, also brings in that competitor—Alliant. While many of the facts here resemble those in the other cases before this Court, the Court provides a basic summary of the most relevant facts in this case below.

---

[1] In considering Defendants' motion to dismiss, the Court takes the facts pleaded in Plaintiffs' complaint as true and construes them in the light most favorable to Plaintiffs as the non-moving parties. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

Lockton is an insurance brokerage firm. In 2016 the Individual Defendants entered into Series Member Agreements ("Member Agreements") with the Pacific Series. These Member Agreements prohibited Producer Members from "disclosing or misusing the Pacific Series' Confidential Information." (Doc. #4, p. 17.) Further, Barnes, Canales, and Roderick entered into separate Producer Partner Agreements ("Partner Agreements") with Lockton Partners. The Partner Agreements contained various non-solicit and non-disclosure provisions, incorporated by reference from the Member Agreements. Further, all Individual Defendants agreed to a 30-day notice of termination requirement. These Agreements also contained Missouri forum-selection and choice of law clauses.

As for Alliant, it is a California-incorporated insurance brokerage firm, and in 2015, it began to execute a strategy revolved "around taking producers, personnel, and clients from its competitors, including Lockton, through unlawful means." (Doc. #4, p. 24.) Through this strategy, Alliant induces producers, such as Lockton's, to join it but instructs them to "act as double agents, using [Lockton's] confidential information and trade secrets for the benefit of Alliant." (Doc. #4, p. 25.) It is then only "after months of planning, Alliant and the individuals coordinate with one another to resign their employment abruptly." (Doc. #4, p. 26.) Lockton alleges that the Individual Defendants followed this strategy. Specifically, Lockton alleges that "Alliant knows that the Lockton agreements require Producer Members and Producer Partners to provide 30 days' written notice of their termination to Lockton" and that Producer Members are subject to various non-solicitation and non-disclosure restrictions." (Doc. #4, p. 30.)

Despite the contractual restrictions, Roderick and Alliant first reached an agreement wherein Roderick agreed to join Alliant but withhold that information from Lockton for months while "covertly working on behalf of Alliant" to misappropriate trade secrets and confidential

2

information. (Doc. #4, p. 31.) Roderick and Alliant then recruited the other Individual Defendants to follow the same plan and misappropriate trade secrets and violate their restrictive covenants. Canales, for example, emailed his client list to his daughter's email address "under the guise of sending his holiday cards early" and Barnes also sent "sensitive confidential information" to his personal email. (Doc. #4, pp. 31-32.) On October 3, 2023, the Individual Defendants notified Lockton while its key leadership was at an annual retreat that they were terminating their membership with the company, effective immediately. Within a week of the Individual Defendants joining Alliant, multiple customers, representing more than $1 million revenue, had moved to Alliant.

Throughout October 2023, the Individual Defendants filed suit against Lockton in California Superior Court. On October 27, 2023, Lockton filed their First Amended Complaint ("Complaint") against Defendants in the District Court for the Western District of Missouri. In the instant action, Lockton asserts the following claims: (I) Tortious Interference with Plaintiffs' Agreements with the Individual Defendants (against Alliant); (II) Misappropriation of Trade Secrets under the Missouri Uniform Trade Secrets Act ("MUTSA") and the Defend Trade Secrets Act ("DTSA") (against all Defendants); (III) Breach of Contract (against all Individual Defendants); (IV) Unjust Enrichment (against all Defendants); (V) Breach of Fiduciary Duties and/or Duties of Loyalty (against all Individual Defendants); (VI) Aiding and Abetting Breach of Fiduciary Duty (against Alliant); (VII) Civil Conspiracy (against all Defendants); and (VIII) Declaratory Judgment (against all Individual Defendants).

Defendants now move to dismiss the complaint on various grounds, including lack of personal jurisdiction over Alliant under Rule 12(b)(2), *forum non conveniens*, failure to state a

3

Case 4:23-cv-00705-SRB   Document 38   Filed 01/19/24   Page 3 of 16

claim upon which relief can be granted under Rule 12(b)(6), and preemption. Each argument is addressed below.

## II. LEGAL STANDARD

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (internal quotations omitted).

> The allegations in the Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Cantrell v. Extradition Corp. of Am.*, 789 F. Supp. 306, 308–09 (W.D. Mo. 1992); *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1076 (8th Cir. 2004). Although "[t]he evidentiary showing required at the prima facie stage is minimal," *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quotations omitted), it "must be tested, not by the pleadings alone, but by the affidavits and exhibits" supporting or opposing the motion to dismiss. *Dever*, 380 F.3d at 1072 (quotations omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

4

for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The Court must accept all facts alleged in the complaint as true when deciding a motion to dismiss. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable" (quotation omitted)). "In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'" *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

### III. DISCUSSION

#### A. Personal Jurisdiction as to Alliant

Defendants argue "the claims against Alliant should be dismissed in their entirety for lack of personal jurisdiction" because this Court does not have general or specific jurisdiction over Alliant and "the Due Process Clause bars the exercise of jurisdiction over Alliant." (Doc. #14, pp. 13, 17.) While Lockton acknowledges that Alliant is based in California, it essentially argues that the Defendants are bound by the Missouri forum-selection clause. Lockton argues that all Defendants are closely related and "Alliant had a reasonable expectation of being haled into Court in Missouri" because it "*knew* that each of the Individual Defendants signed contracts with Missouri entities that contained Missouri forum-selection clauses[.]" (Doc. #30, pp. 9-10) (emphasis in original).

A third party may be bound by a forum-selection clause and confer the Court with personal jurisdiction when the third party is so "closely related to the dispute such that it becomes foreseeable that it will be bound." *Marano Enters. of Kan. v. Z–Teca Rests.*, L.P., 254 F.3d 753, 757 (8th Cir. 2001) (quotation omitted). "An analysis of what 'closely related' and

5

'foreseeable' mean should be grounded in the requirements of the Due Process Clause: minimum contacts between the defendant and the forum state such that the suit does not offend the traditional notions of fair play and substantial justice." *Bunge N. Am., Inc. v. Mickelson*, No. 4:21 CV 961 DDN, 2022 WL 266675, at *5 (E.D. Mo. Jan. 28, 2022). "Decisions in the Eighth Circuit applying the 'closely related' test refer to the relationships of the parties to the cause of action and to the signatories of relevant documents." *Id.*

Here, there is little doubt that Alliant is "closely related" to the dispute between Lockton and the Individual Defendants:

> Indeed, it was [Alliant's] employment of [the Individual Defendants]—while it was fully aware of the employment agreements and, hence, the forum-selection clauses—and [the Individual Defendants'] subsequent solicitation of [Lockton] clients on behalf of [Alliant] that gave rise to this action; this caused not only [the Individual Defendants] to be sued, but also caused [Alliant] to be sued in the same case.

*Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054, 1056–57 (D. Minn. 2008); *see also TLC Vision (USA) Corp. v. Freeman*, No. 4:12CV01855ERW, 2013 WL 230254, at *11 (E.D. Mo. Jan. 22, 2013) ("[Third-party's] knowledge of the Missouri contract provisions, particularly the requirement that litigation take place in Missouri, provided a reasonable expectation that it might be held accountable in the forum.") Contrary to Defendants' argument that Alliant must have voluntarily joined the litigation to be bound by the forum-selection clause, the Court agrees with the District of Minnesota in *Medtronic, Inc.* that the correct inquiry is only: "[S]hould the third party reasonably foresee being bound by the forum-selection clause because of its relationships to the cause of action and the signatory to the forum-selection clause?" *Medtronic, Inc.*, 530 F. Supp. at 1057; *see also Bunge N. Am., Inc.*, No. 4:21 CV 961 DDN, 2022 WL 266675, at *6 (finding a defendant sufficiently closely related to warrant application of the forum-selection clause).

Again, there is no reason to believe that Alliant could not reasonably foresee being bound by a Missouri forum-selection clause when it solicited the Individual Defendants to work for it knowing that they had signed agreements with Lockton. Indeed, Alliant does not dispute that it knew of the forum-selection clause, only that it did not consent to it. As provided above, consent is not the inquiry under the "closely related" doctrine. Further evidence of Alliant's close relationship to the Individual Defendants includes that all Defendants share the same legal counsel, and that Alliant has a continued interest in employing the Individual Defendants and their right to solicit former Lockton customers. *See C.H. Robinson Worldwide, Inc. v. Rodriguez*, No. CIV. 12-264 DSD/SER, 2012 WL 4856245, at *5 (D. Minn. Oct. 12, 2012). Finally, while Alliant was not a signatory on the Agreements, it does not offend "traditional notions of fair play and substantial justice" for Alliant to be haled into a court that was indicated by Agreements it knew the Individual Defendants had signed. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Therefore, Alliant is subject to personal jurisdiction under the closely related party doctrine, and dismissal of Alliant is not warranted. The Court denies the parties' request to order jurisdictional discovery.

### B. *Forum Non Conveniens*

Defendants also argue this suit should be dismissed under the doctrine of *forum non conveniens* because the California action provides a more convenient and proper forum to resolve the dispute. Lockton counters that public and private interest factors and the presence of valid forum selection provisions weigh against dismissal under this doctrine.

"The doctrine of *forum non conveniens* allows trial courts discretion to refuse to exercise jurisdiction, where jurisdiction and venue are otherwise proper, if the forum is seriously inconvenient for the trial of the action and a more appropriate forum is available[.]" *Campbell v. Francis*, 258 S.W.3d 94, 97 (Mo. Ct. App. 2008). "[T]he doctrine is to be applied only in

7

'exceptional circumstances.'" *K-V Pharm. Co.*, 648 F.3d at 597. "It is well established that where there exists an alternative forum which will take jurisdiction and in which the balance of convenience lies, the federal courts possess the inherent power to refuse jurisdiction and dismiss the pending action under the doctrine of *forum non conveniens*." *J. F. Pritchard & Co. v. Dow Chem. Of Canada, Ltd.*, 331 F. Supp. 1215, 1220 (W.D. Mo. 1971), *aff'd*, 462 F.2d 998 (8th Cir. 1972). "Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Rests., Inc. v. CKE Rests., Inc.,* 183 F.3d 750, 752 (8th Cir. 1999).

      Here, the Court agrees with Lockton. When considering the factors established by the Supreme Court for evaluating the sufficiency of a forum when there is an alternative, the factors weigh in favor of the forum referenced in the forum selection clause. While Defendants cite a statistic that it takes an average of 27.3 months to reach a trial date in this Court compared to 12-24 months in California, there is no evidence that this case could not proceed to trial within the same period cited as the average in California. A trial date is not only dependent on the Court itself but how efficiently the parties conduct discovery and move the case. Therefore, the Court rejects the argument that "judicial economy" favors dismissal. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). Further, a Missouri court has an interest in maintaining a case concerning claims raised by two Missouri entities with Missouri witnesses. While the Court recognizes that some witnesses and evidence are in California, considering Missouri law was designated in the Agreements, Missouri also has an interest in interpreting and applying its own law. Therefore, there are no "exceptional circumstances" warranting dismissal under the doctrine of *forum non conveniens*. *K-V Pharm. Co.*, 648 F.3d at 597.

C. Rule 12(b)(6)

1. Count I – Tortious Interference with Plaintiffs' Agreements with the Individual Defendants (Against Alliant)

Defendants argue that Lockton fails to allege a claim for tortious interference against Alliant. Lockton disagrees.

Under Missouri law, "[t]ortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. banc 1993).

Here, the Court agrees with Lockton, finding that Lockton has properly pled that Alliant tortiously interfered with Lockton's business expectancy by soliciting Lockton's Producer Members and Partners and their customer accounts. Specifically, Lockton alleges that Alliant knew of the Individual Defendants' agreements with Lockton and that "Alliant intentionally induced each individual to breach the terms of [those] agreements." (Doc. #4, p. 35.) Contrary to Defendants' assertion that the Complaint does not contain a "single non-conclusory, factual allegation as to how Alliant purportedly induced" the Individual Defendants to breach their agreements with Lockton, Lockton spends ample time describing Alliant's "leveraged hire strategy" that involves inducing Lockton Members and Partners to breach their agreements, "act as double agents," and then improperly use Lockton's Confidential Information. (Doc. #14, p. 27; Doc. #4, pp. 24, 25.) Last, Lockton alleges it was damaged and continues to be damaged by Alliant's actions. These allegations are sufficient to survive a motion to dismiss.

## 2. Count II – Misappropriation of Trade Secrets Under the MUTSA and DTSA (Against all Defendants)

Defendants argue that Lockton's misappropriation of trade secrets claim under MUTSA and DTSA must fail because: 1) "[t]he Lockton Plaintiffs have failed to allege the existence of a trade secret purportedly misappropriated by any Defendant" and 2) "[Lockton] ha[s] not alleged that Alliant and Racunas misappropriated any Lockton trade secrets owned by each of the Lockton Plaintiffs." (Doc. #14, pp. 20-21.) Lockton disagrees.

DTSA and MUTSA "are essentially identical." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 955 (8th Cir. 2023). To state a claim under DTSA, a party must plead: "(1) the existence of a protectable trade secret; (2) misappropriate[ion] of th[e] trade secret[] by the defendant; and (3) damages." *Champion Salt, LLC v. Arthofer*, Case No. 4:21-cv-00755, 2021 WL 4059727, at *11 (E.D. Mo. Sept. 7, 2021) (citation omitted). "A misappropriation occurs when a person who has acquired or derived knowledge of a trade secret uses it without the owner's consent, among other potential means." *Id.* "To establish a violation of the [MUTSA], Plaintiffs must demonstrate (1) the existence of a protectable trade secret, (2) misappropriation of those trade secrets by [d]efendants, and (3) damages." *Secure Energy, Inc. v. Coal Synthetics, LLC*, 708 F. Supp. 2d 923, 926 (E.D. Mo. 2010). "[M]isappropriation of a trade secret occurs when a person uses the trade secret of another without express or implied consent[.]" *Id.* Both the DTSA and MUTSA generally define a "trade secret" as

> information that the owner thereof has taken reasonable measures to keep secret and that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

*Ahern Rentals, Inc*, 59 F.4th at 955 (cleaned up).

The Court finds that Lockton has sufficiently pled DTSA and MUTSA claims against Alliant and the Individual Defendants. First, the Court disagrees with Defendants that Lockton does not sufficiently identify the subject matter of its trade secrets. Lockton provides, for example, that it

> possesses Confidential Information about its Customer Accounts' insurance needs and preferences, risk appetite, pricing and coverage requirements, present premiums, deductibles, collateral levels, commission arrangements, renewal dates, loss history, levels of satisfaction, and other information that would be greatly beneficial to competitors in soliciting such Customer Accounts.

(Doc. #4, p. 37.) Further Lockton has alleged that its Confidential Information has "independent economic value from not being generally known" and that its Confidential Information is "subject to efforts by Lockton to keep [it] confidential and secret[,]" by for example, its non-disclosure requirements. (Doc. #4, p. 36.) The Court agrees with Lockton that "[b]y contractually prohibiting those with access to this information from disclosing it to others, Lockton secures for itself an economic advantage its competitors cannot enjoy." (Doc. #30, p. 18.) Therefore, Lockton has alleged a protectable trade secret.

Further, the Court finds that Lockton has sufficiently pled that all Defendants, including Alliant and Racunas, misappropriated Lockton's trade secrets. Lockton has alleged that the "Individual Defendants are using, or intend to use, [Lockton's] Confidential Information to solicit business from Lockton's current and prospective Customer Accounts to depart Lockton and join or do business with Alliant, without Lockton's consent." (Doc. #4, p. 37.) As for Alliant, Lockton alleges that Alliant has acquired Lockton's Confidential Information through the Individual Defendants and is "currently using [it] to solicit business from the Pacific Series' current and prospective customers[.]" (Doc. #4, p. 38.) Contrary to Defendants' assertion that Lockton's allegations are "boilerplate, conclusory recitations of the elements of a misappropriation claim[,]"

11

the Amended Complaint provides sufficient allegations to support a claim that all Defendants "either [have] misappropriated or will misappropriate" Lockton's trade secrets. (Doc. #14, p. 21); *Leggett & Platt, Inc. v. Hollywood Bed & Spring Mfg. Co.*, No. 20-05010-CV-S-BP, 2020 WL 13580657, at *7 (W.D. Mo. May 15, 2020). At this stage of the proceedings, before discovery has been conducted, those allegations are sufficient to survive a motion to dismiss.

### 3. Count V – Breach of Fiduciary Duties and/or Duties of Loyalty (Against all Individual Defendants)

Defendants argue that Lockton fails to allege a viable claim for breach of fiduciary duty and/or duty of loyalty against the Individual Defendants. Lockton disagrees.

"In Missouri, a claim for breach of fiduciary duty has four elements: (1) the existence of a fiduciary relationship between the parties; (2) a breach of that fiduciary duty; (3) causation; and (4) harm." *Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*, 574 F.3d 973, 983 (8th Cir. 2009).

Here, the Court agrees with Lockton. Lockton adequately pled the Individual Defendants owed fiduciary duties and duties of loyalty by referencing that they agreed to "devote full time and attention to the Business of [Lockton] . . . and do all things as may be reasonably directed by appropriate officers of [Lockton]." (Doc. # 4, p. 41) (citation omitted). Further, each Individual Defendant is alleged to be at minimum "an owner and Producer Member of the Pacific Series" and Canales, Roderick, Barnes are also owners and Producer Partners of Lockton Partners. (Doc. #4, pp. 6-7); *see also Hibbs v. Berger*, 430 S.W.3d 296, 315 (Mo. App. E.D. 2014) (holding that managers and members of an LLC owe fiduciary duties to the LLC).

Lockton then pled breach of their fiduciary duties based on the Individual Defendants' failure to provide notice as required in the agreement; concealment of Alliant's offer of employment; working for a competitor while still a member of Lockton in violation of 30-day notice requirement; taking of Lockton's confidential information to use on behalf of Alliant; and

soliciting or attempting to solicit Lockton's employees and customer accounts to transfer to Alliant. Finally, Lockton adequately pled the Individual Defendants' taking and using of the confidential information has damaged the company. The above allegations "allow[] the court to draw the reasonable inference" that the Individual Defendants are liable for breach of fiduciary duty. *Ash*, 799 F.3d at 960.

### 4. Count VI – Aiding and Abetting Breach of Fiduciary Duty (Against Alliant)

Defendants largely argue Lockton's aiding and abetting breach of fiduciary duty claim must fail because "Missouri does not recognize a claim for aiding and abetting in the commission of a breach of fiduciary duties." (Doc. #14, p. 29.) Lockton disagrees.

The Restatement (Second) of Torts § 876(b) provides the basis for "[t]he tort of aiding and abetting." Section 876(b) provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.

Restatement (Second) of Torts § 876(b) (1979). Missouri courts have not decided whether to recognize a cause of action for abetting and abetting a breach of fiduciary duty. *See Jo Ann Howard & Assocs., P.C. v. Cassity*, 868 F.3d 637, 651 (8th Cir. 2017). In the face of this uncertainty, federal courts must predict how the Missouri Supreme Court would rule. *Id.*

Lockton largely relies on a Western District of Missouri case from 2013 that declines to grant a motion to dismiss because the defendant could not show "that, as a matter of law, aiding and abetting liability does not exist for torts in Missouri." *Lonergan v. Bank of Am., N.A.*, No. 2:12-CV-04226-NKL, 2013 WL 176024, at *12 (W.D. Mo. Jan. 16, 2013). In support of its decision, the Court cited various Missouri cases where aiding and abetting was found in the

"context of trespass, assault, or battery" and found "no principled reason why aiding and abetting would exist for these torts, but not for at least other intentional torts[.]" *Id.*

Ultimately, the Court is not prepared to predict how the Missouri Supreme Court would rule on this issue at this stage of the proceedings. Neither party has cited a case that is directly controlling on this issue. The most recent opinion cited is from the Eighth Circuit in 2017 and in it, the Circuit stated it was "not prepared to predict" whether Missouri would recognize the cause of action based on the facts before it. *See Jo Ann Howard & Assocs., P.C.*, 868 F.3d at 651. Therefore, at this stage of the proceedings, the Court finds that Defendants have not shown as a matter of law that this claim fails. *See Duncan v. Jack Henry & Assocs., Inc.*, 617 F. Supp. 3d 1011, 1033–34 (W.D. Mo. 2022) ("At the motion-to-dismiss stage, the relevant inquiry is not whether Plaintiff is ultimately entitled to the relief [they] seek[], but instead is whether Plaintiff has alleged sufficient facts to state a plausible claim that [they are] entitled to the relief [they] seek[].") Ultimately, Lockton has indeed stated a plausible claim for aiding and abetting breach of fiduciary duty as the Complaint contains allegations that Alliant conspired with the Individual Defendants to breach their Member and Partner Agreements, recruit Lockton colleagues, and "execut[e] the raid at a time and in a manner that would inflict the most harm on Lockton." (Doc. #4, p. 33.)

### 5. Count VII – Civil Conspiracy (Against All Defendants)

Defendants argue that Lockton has not stated a plausible claim for civil conspiracy. Lockton disagrees.

> A cause of action for civil conspiracy requires pleading facts that support each element, which are: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) resulting damages. The essence of a civil conspiracy is an unlawful act agreed upon by two or more persons.

*Mackey v. Mackey*, 914 S.W.2d 48, 50 (Mo. Ct. App. 1996). "The term unlawful, as it relates to civil conspiracy, is not limited to conduct that is criminally liable, but rather may include individuals associating for the purpose of causing or inducing a breach of contract or business expectancy." *Lyn-Flex W., Inc. v. Dieckhaus*, 24 S.W.3d 693, 700–01 (Mo. Ct. App. 1999).

Here, Lockton has alleged that Defendants acted unlawfully by "agree[ing] with each other" with the object of "further[ing] the tortious and unlawful purposes" of "collaborating in the Individual Defendants' breaches of contract and fiduciary duties, tortious interference, and theft of trade secrets." (Doc. #4, p. 43.) These allegations coupled with Lockton's general allegations of Alliant's "leveraged hire strategy" to induce Lockton's Members and Partners to breach their agreements and covertly work for Alliant, are sufficient to state a claim for civil conspiracy.

**D.      Preemption**

Defendants argue that "Counts I, IV, V, VI, and VII are preempted by the MUTSA." (Doc. #14, p. 24.) In response, Lockton argues that these claims should be dismissed because: "(1) Lockton alleges facts in support of its common law and tort claims that are independent of its trade secret claim; and 2) dismissal would run contrary to the established practice in Missouri federal district courts of reserving judgment on the issue of MUTSA preemption at the Rule 12 stage." (Doc. #30, p. 23.)

MUTSA "displace[s] conflicting tort, restitutionary, and other laws . . . providing civil remedies for misappropriation of a trade secret." Mo. Rev. Stat. § 417.463.1. Federal courts in Missouri have consistently interpreted this provision to preempt common-law claims that "are based on facts related to the misappropriation of trade secrets claim." *Reliant Care Mgmt, Co. v. Health Sys.*, No. 4:10-cv-00038-CDP, 2011 WL 4369371, at *3–4 (E.D. Mo. Sept. 19, 2011).

The Court agrees with Lockton that dismissal of these claims at the motion to dismiss stage is improper. "For preemption to be triggered, the property that has been stolen/misappropriated must be a trade secret: otherwise, the Trade Secret Act has no application. . . . However, if the information does not qualify as a trade secret, then the Trade Secret Act has no application." *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 917 (W.D. Mo. 2010). Ultimately, until it is determined as a matter of law whether Lockton's Confidential Information qualifies as a trade secret, the Court cannot conclude whether Counts I, IV, V, VI, and VII are preempted. *See id.*; *see also Farmers Ins. Exch. v. Jasper*, No. 4:23-CV-00406-SRC, 2023 WL 7181661, at *11 (E.D. Mo. Nov. 1, 2023) (declining to dismiss based on preemption when it "has not determined as a matter of law that the underlying information qualified as a trade secret").

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Doc. #13) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: <u>January 19, 2024</u>